\*NOT FOR PUBLICATION\*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TAMMY DANISE,<br><br>                  Plaintiff,<br><br>v.<br><br>DIVERSIFIED MAINTENANCE *et al.*,<br><br>                  Defendants. | Civ. Action No. 20-01263 (GC)<br><br>**OPINION** |

**CASTNER, District Judge:**

This matter comes before the Court on a motion for summary judgment brought by Defendant Diversified Maintenance Systems, LLC ("Defendant" or "Diversified") pursuant to Federal Rule of Civil Procedure 56 on the grounds that Plaintiff Tammy Danise ("Plaintiff") cannot establish a *prima facie* case of negligence arising from a slip-and-fall incident, which occurred at a Macy's store on February 7, 2018. For the reasons set forth herein, Diversified's motion is **GRANTED**; Plaintiff's claims are dismissed.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The undisputed factual circumstances surrounding this negligence action, as revealed through discovery, are set forth in submissions of the parties in accordance with Local Civil Rule 56.1. *See* ECF No. 33-3, Defendant's Statement of Material Facts ("Def. SOMF"); ECF No. 49, Plaintiff's Statement of Material Facts ("Pl. SOMF"). Any disagreements among the parties as to the timing or characterization of certain aspects of the incident in question are noted for clarity where necessary and appropriate.

1

On February 7, 2018, Plaintiff, a Macy's employee, slipped and fell in a hallway at the Menlo Park Mall Macy's store, where Diversified, a cleaning company, is contracted to perform janitorial services. *See* Def. SOMF ¶¶ 1–2, 36. On the day of the incident, Plaintiff arrived at the Menlo Park Mall between 9:00 and 9:30 a.m. for a meeting. *See id.* ¶ 3. The weather that morning consisted of a wintry mix. *See id.* ¶ 5. Plaintiff entered the building through the employee entrance, located in the vestibule where the store customers enter. *See id.* ¶ 6. Within the employee entrance is a floor mat, followed by a stairwell of two or three flights of concrete steps, a security station, and an entry door to a hallway. *See id.* ¶¶ 7–9, Ex. 11. The hallway, which consists of white tile flooring, leads to the conference room in which the meeting was held. *See id.* ¶ 10, Ex. 11. Upon entering the building and making her way to the conference room, Plaintiff did not notice any cleaning equipment, puddles, otherwise dangerous conditions, nor did she have any difficulty walking down the hallway. *See id.* ¶¶ 11–13, Ex. 4 at 64:8–65:5.

Around 11:00 a.m., Plaintiff took a break from the meeting to use the restroom, at which point Plaintiff walked out of the conference room, into the hallway, and subsequently lost her balance and fell to her knees. *See id.* ¶¶ 17–22, Ex. 4 at 71:14–72:12. Although Plaintiff did not observe any water on the hallway floor prior to her fall, Plaintiff noticed water droplets after she slipped, which she described as "not like a puddle," but "drops of water all over the floor." *See id.* ¶ 25, Ex. 4 at 82:1–23. According to Plaintiff, the water in the hallway appeared as if "it was falling off people's coats and rain jackets and umbrellas and shoes." *See id.* Ex. 4 at 82:16–18. Another Macy's employee, who was walking ahead of Plaintiff, did not witness Plaintiff's fall and did not similarly slip as she made her way down the hallway. *See id.* ¶¶ 20–21. Following the incident, Plaintiff told security she had slipped on the water and returned to her meeting. *See id.* Ex. 4 at 93:25–94:7. Plaintiff did not observe water on the floor outside the conference room at any other time that day, nor did Plaintiff see wet floor signs in the area at any point. *See id.* ¶¶ 28–29, Ex. 4 at 94:17–98:20;

Pl. SOMF ¶¶ 7, 28–29.

Diversified provides janitorial services for certain Macy's stores, including the Menlo Park Mall location. *See* Def. SOMF ¶ 36. According to Diversified, the vast majority of its cleaning responsibilities are dedicated to the "front of the house," where store customers are present, though Diversified also cleans areas designated for employees only. *See id.* ¶ 37, Ex. 5 at 14:6–14. In addition to regularly scheduled cleanings throughout the store, Diversified employees are also responsible for responding to cleaning requests from Macy's staff in the event of a wet floor or similar condition. *See id.* Ex. 5 at 19:6–24. Typically, however, Diversified employees are not responsible for investigating the cause of a hazardous condition, nor does Diversified or Macy's document service requests made to Diversified employees. *See id.* Ex. 5 at 19:20–20:17.

Two former Diversified employees, who worked at the Menlo Park Mall Macy's location on the date of the incident, provided deposition testimony, but neither had first-hand knowledge of the incident. One former Diversified employee testified to having carried out cleaning duties in the employee hallway at issue only on "rare" occasions, stating that "she would go there if they called because the bathrooms were clogged or the floors were wet, but I barely walked that area." *See id.* Ex. 6 at 18:4–8. Another former Diversified employee similarly testified that he was not assigned to clean the hallway in which Plaintiff slipped. *See id.* Ex. 7 at 26:4–6. He further testified that although an employee was assigned to the hallway in which Plaintiff slipped and would have cleaned it early in the morning of the incident, no employee would have been assigned to patrol the hallway for hazardous conditions throughout the day. *See id.* Ex. 7 at 32:20–33:13. Both former employees testified to the regular use of yellow "wet floor" signs by Diversified in response to a known hazard and following cleanings of particular areas. *See* Pl. SOMF ¶ 65. The two former employees also acknowledged that it was common practice to clean any area of the floor that they happened to notice was wet or dirty during the course of their work shift. *See id.* ¶¶ 15, 17.

On January 7, 2020, Plaintiff filed this action in the Superior Court of New Jersey, Law Division, Somerset County. Diversified removed the lawsuit to the District of New Jersey on February 5, 2020. *See* ECF No. 1. Following a period of discovery, Diversified moved for summary judgment on May 20, 2022. *See* ECF No. 33 ("Def. Mot."). Plaintiff opposed the motion on July 5, 2022. *See* ECF No. 48 ("Pl. Opp."). On July 25, 2022, Diversified filed its reply. *See* ECF No. 52 ("Def. Reply").

## II.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). And a fact is "material" only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. The moving party bears the burden of showing that no "genuine issue" exists such that summary judgment is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004). Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N.*

*Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The court's role is "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. There can be "no genuine issue as to any material fact," however, if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23.

**III.  DISCUSSION**

Diversified moves for summary judgment, asserting that Plaintiff cannot demonstrate a *prima facie* case of negligence. Specifically, Diversified argues that, as a janitorial contractor, it did not breach any duty of care with respect to the maintenance or cleaning of the premises at issue, particularly as Plaintiff has failed to put forth any evidence that it had actual or constructive notice of the hazardous condition that allegedly caused Plaintiff's fall. In opposition, Plaintiff contends that, based on the circumstantial evidence in the record, a reasonable jury could conclude that Diversified had notice of the dangerous condition of the floor, and thus breached its duty of care when it failed to either warn of the wet floor or promptly identify and dry the area upon which Plaintiff slipped. As set forth in greater detail below, because Plaintiff fails to raise a genuine dispute of material fact as to Diversified's actual or constructive notice of the purportedly wet floor, Plaintiff cannot establish an essential element of her negligence case. Diversified is entitled to judgment as a matter of law.

Under New Jersey law, "[t]o sustain a cause of action for negligence, a plaintiff must establish four elements: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 221 N.J. 36, 51 (2015) (internal quotations and citations omitted). "It is the obligation of the plaintiff to prove each element." *Coleman v. Martinez*, 247 N.J. 319, 337 (2021). "[W]hether a defendant owes a legal duty to another and the scope of that duty are generally questions of law for the court to decide." *G.A.-H v. K.G.G.*, 238 N.J. 401, 414 (2019) (quoting

5

*Robinson v. Vivirito*, 217 N.J. 199, 208 (2014)); *see Jerkins v. Anderson*, 191 N.J. 285, 294 (2007) (explaining that "[w]hether a duty of care exists is a question of law that must be decided by the court" and "[i]n making that determination, the court must first consider the foreseeability of harm to a potential plaintiff").

New Jersey courts "have often recognized that more than one party can possess similar duties or responsibilities toward a third party." *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 442 (1993). "Under well-established principles a contractor has a duty to persons, other than the one with whom the contractor has made the contract, to carry out his undertaken work in a careful and prudent manner, and he may be responsible to third persons for their personal injuries and property damages proximately caused by his failure to exercise that care." *Aronsohn v. Mandara*, 98 N.J. 92, 105 (1984). Where, as here, a plaintiff asserts that a contractor has assumed or shares the maintenance and cleaning responsibilities of a business owner, principles similar to those associated with premises liability apply. *See, e.g., Ryder v. Ocean Cty. Mall*, 340 N.J. Super 504 (App. Div. 2001); *Ferrara v. Continental Airlines, Inc.*, 2009 WL 2924315, at *2 (N.J. Sup. Ct. App. Div. Sept. 15, 2009); *Fleming v. Macy's East, Inc.*, 2008 WL 2951889, at *4 (N.J. Sup. Ct. App. Div. July 30, 2008).

As such, businesses, and those who have contractually assumed maintenance responsibilities relative to a business, "owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation."[1] *Nisivoccia v. Glass Gardens, Inc.*, 175 N.J. 559, 563 (2003). "Owners of premises are generally not liable for injuries caused by defects of

---

[1] Plaintiff does not bring a claim against Macy's, having decided to proceed solely against its contracted cleaning service. However, as Plaintiff recognizes, "Macy's owed [her] a separate duty to maintain the property in a reasonably safe condition." *See* Pl. Opp. at 8. While this posture differs from a typical negligence case arising from a hazardous condition on business premises, neither party argues that Macy's absence as a party to this action warrants application of a different standard than the standard of liability set forth *infra*—that is, in order for liability to attach to Diversified, it must have had actual or constructive notice of the hazardous condition at issue.

which they had no actual or constructive notice and no reasonable opportunity to discover." *Troupe v. Burlington Coat Factory Warehouse Corp.*, 443 N.J. Super. 596, 601–02 (App. Div. 2016). Therefore, "[o]rdinarily an injured plaintiff . . . must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." *Nisivoccia*, 175 N.J. at 563. Notably, "the mere existence of a dangerous condition does not, in and of itself, establish actual or constructive notice." *Prioleau v. Ky. Fried Chicken, Inc.*, 434 N.J. Super. 558, 571 (App. Div. 2014) (citation omitted). Rather, "[l]iability for injuries caused by premises defects is imposed when a plaintiff establishes a defendant knew or had the reasonable opportunity to discover and correct the defect." *Id.* (citing *Brown v. Racquet Club of Bricktown*, 95 N.J. 280, 291 (1984)).

Here, Plaintiff's theory of liability cannot rest on Diversified's actual notice of the hazardous condition, as nothing in record indicates that Diversified was actually aware of the water droplets on the hallway floor. Nor does this case implicate the mode-of-operation rule, by which notice is presumed "where a business has adopted a practice that in effect transfers risk from the business to the consumer by allowing customers, rather than employees, to gather goods from shelves in a self-service model." *Teixeira v. Walmart Stores, Inc.*, No. 18-13103, 2021 WL 4272828, at *2 (D.N.J. Sept. 16, 2021); *see Prioleau v. Ky. Fried Chicken, Inc.*, 223 N.J. 245, 249 (2015) ("The rule has only been applied to settings such as self-service or a similar component of the defendant's business, in which it is reasonably foreseeable that customers will interact directly with products or services, unassisted by the defendant or its employees."). Indeed, the Supreme Court of New Jersey has squarely rejected application of the rule under circumstances similar to those presented here. *See Prioleau*, 223 N.J. at 265 ("The potential for customers to track water into a building during inclement weather is not contingent on a defendant's business model; that risk exists in virtually any facility that admits patrons from public sidewalks or parking areas into its facility."). Thus, to state

a negligence claim, Plaintiff must show that Diversified had constructive notice of the wet floor in the hallway where she slipped.

"A defendant has constructive notice when the condition existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" *Troupe*, 442 N.J. Super. at 602 (quoting *Parmenter v. Jarvis Drug Stores, Inc.*, 48 N.J. Super. 507, 510 (App. Div. 1957)). Constructive notice may be inferred through "eyewitness testimony" or "characteristics of the dangerous condition giving rise to the slip and fall," which indicate that the condition had existed for a sufficient period of time. *See id.* According to Plaintiff, absent eyewitness testimony as to her fall or the wet floor, "inferences of fact from the circumstantial proofs . . . would allow a jury to find that the defendant's employees had notice that conditions existed that would cause a wet floor and a safety hazard for people walking in the hallway." *See* Pl. Opp. at 14. But the mere fact that the weather on the morning of February 7, 2018 consisted of rain and sleet does not support the inference that Diversified should have been aware of the water droplets in the hallway where Plaintiff fell. "An inference can be drawn only from proved facts and cannot be based upon a foundation of pure conjecture, speculation, surmise or guess." *Fleming*, 2008 WL 2951889, at *3 (quoting *Long v. Landy*, 35 N.J. 44, 54 (1961)). Moreover, "[e]ven when the 'general weather conditions' are such that a hazardous condition may materialize, constructive notice cannot be inferred from this mere possibility." *Tameru v. W-Franklin, L.P.*, 350 F. App'x 737, 740 (3d Cir. 2009) (citations omitted); *cf. Parameter v. Jarvis Drug Store, Inc.*, 48 N.J. Super. 507, 511 (App. Div. 1957) (fact issue as to constructive notice in negligence action where "the wetness of the floor was attributable to the entry of rain blown or carried in when the door was opened by customers" and "[t]he dirtiness of the water tended to be corroborative of the length of time it lay on the floor").

Aside from the existence of stormy weather on February 7, 2018, Plaintiff has failed to set forth any evidence as to when the hazardous condition on the floor was created, how long it had been

present, or any indication that Diversified was aware the employee hallway in question became hazardous in such weather conditions. When Plaintiff arrived at the Menlo Park Mall Macy's on the morning of the incident, Plaintiff did not observe any dangerous substance on the floor of the hallway, she did not experience any trouble walking down the hallway, and the record does not indicate that anyone else noticed water droplets on the floor or similarly fell. Even if a jury could conclude, as Plaintiff argues, that the water upon which she slipped had been tracked down multiple flights of steps into the employee hallway by other meeting attendees arriving from the outside, nothing in the record demonstrates that Diversified should have been aware of the purportedly dangerous condition of the hallway floor at the time of the incident. To find an issue of fact as to constructive notice in such circumstances would require holding that Diversified was obligated to immediately remedy or warn about any water droplets in any location of the Macy's premises, even those not typically patrolled by Diversified and reserved for Macy's employees, simply because of the inclement weather. Plaintiff does not, and cannot, point to any authority supporting that notion. Nor can Plaintiff show, through proofs in the record, that it was the regular practice or contractual duty of Diversified to conduct its cleaning service in such a manner or to perform regular, periodic inspections of the employee hallway at all. In short, "[t]here are no facts indicating" that Diversified was "negligent in failing to become appraised of the situation." *See Fleming*, 2008 WL 2951889, at *4 (affirming summary judgment where the plaintiff failed to demonstrate that a department store's cleaning service "had actual knowledge" or "should have been aware of" a water spill). Without notice of the dangerous condition, Diversified could not have breached any duty it may have owed to Plaintiff. Diversified is entitled to summary judgement as to Plaintiff's negligence claim.

IV. **CONCLUSION**

For the foregoing reasons, Diversified's motion for summary judgment is **GRANTED**. An appropriate Order shall follow.

Date: February 28, 2023 /s/ Georgette Castner
Hon. Georgette Castner
U.S. District Judge